UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES A.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 2:21-cv-702

Watson, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff, James A., brings this action under 42 U.S.C. § 405(g) to seek review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. The Commissioner's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

On July 23, 2018, Plaintiff filed applications for Disability Insurance Benefits ("DIB"), and for Supplemental Security Income ("SSI"). In his applications, Plaintiff alleges he became disabled on July 14, 2018, based upon a combination of cervicogenic cephalgia, chronic migraines, scoliosis, back/neck pain, chronic depression, anxiety, and chronic nausea/vertigo/dizziness. (Tr. 184-85, 202). After being denied benefits initially

---

[1]The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On March 27, 2020, ALJ Deborah Sanders held a telephonic hearing at which Plaintiff and a vocational expert both testified.  (Tr. 881-928).[2]  On May 11, 2020, the ALJ issued an adverse decision. (Tr. 12-37).

Plaintiff was 25 years old on the date of his alleged disability, with a high school education and some college.  He lives with his parents and previously worked as a fitness instructor.  He also has past relevant work as a forklift operator and material handler.

In her written decision, the ALJ found that Plaintiff had engaged in substantial gainful activity ("SGA") through the third quarter of 2018, ending on September 30, 2018. (Tr. 17-18).  However, beginning in the fourth quarter of 2018, Plaintiff's earnings fell below SGA.  Therefore, the ALJ considered whether he was disabled beginning on October 1, 2018.  (*Id.*)

The ALJ determined that Plaintiff has the following severe impairments: migraines, gastroesophageal reflux disease, substance addiction disorder (marijuana), anxiety disorder, depressive disorder.  (Tr. 18).  However, the ALJ found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment.  (*Id.*)  The ALJ next assessed Plaintiff's residual functional capacity ("RFC"):

> After careful consideration of the entire record, [the ALJ] find[s] that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with lift/carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 of 8 hours; sit for 6 of 8 hours; push/pull as much as he can lift and carry, but only frequent climbing of ramps and stairs; never climbing ladders, ropes, and scaffolds; frequent stoop, kneel, crouch, or crawl; avoid all exposure to hazards such as unprotected heights and dangerous machinery and no commercial driving; can carry out 1-4 step tasks that do not require a constant pace (defined as no fast production rate pace); can adapt to

---

[2]Although most of the Certified Administrative Record is filed at Docket Entry 12, (Doc. 12), the transcript from the hearing is filed as a Supplemental Administrative Record.  (*See* Doc. 13).

infrequent changes that can be easily explained.

(Tr. 20).

Based upon testimony from the vocational expert ("VE"), the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (Tr. 30). Considering the VE testimony and Plaintiff's age, education, work experience and RFC, the ALJ determined that Plaintiff is still able to perform other work that exists in significant numbers in the national economy, including the representative jobs of marker, cleaner or assembler. (Tr. 31-32). Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act. (Tr. 32). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 1-6).

In this judicial appeal, Plaintiff argues that the ALJ erred: (1) when she failed to include additional mental RFC limitations for concentration, persistence and pace, and failed to include additional physical "accommodations for [Plaintiff's] …need for additional time off task, flexible breaks and absences," (Doc. 18 at 9) and (2) when she deemed Plaintiff's subjective complaints to be inconsistent with the record. I find no error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial

3

gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's

4

impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

B. **Plaintiff's Claims**

1. **The ALJ's Determination of Plaintiff's RFC**

    (a) **Mental RFC Limitations**

Plaintiff first argues that the ALJ erred in her assessment of his mental RFC limitations. Discussing her determination of Plaintiff's mental RFC, the ALJ explained her reasoning as follows:

> I considered the overall record, with emphasis on [Plaintiff]'s mental health records and objective mental status exams. I compared these longitudinal records to the psychological evaluation, which is a one-time evaluation with diagnoses and functional assessments supported in considerable part by [Plaintiff]'s subjective reports. These subjective reports are not entirely consistent with the longitudinal record of [Plaintiff]'s reports and the many normal mental status exam findings elsewhere. The psychological examiner's opinions are thus persuasive only in part (8F). To the extent this opinion evidence is supported by objective evidence or reports supported elsewhere in the record, the limitations are more persuasive; but to the

5

extent they rely on [Plaintiff]'s reports at this one-time evaluation that are unsupported or contradicted elsewhere, they are less persuasive. The functional assessment suggests no difficulty in the first paragraph B criteria (understand, remember, apply information) and no significant difficulty in interacting with others, which is overall persuasive. As for concentrating, persisting and maintaining pace, the indicated "some difficulty," while undefined, is generally consistent with the moderate limitation supported by the record and found by the State agency psychological consultants. As for "difficulty" with stress, this is persuasive to the extent it is read as a moderate limitation, relying more on the objective support at this exam and elsewhere in the record, and not persuasive to the extent it relied too heavily on the subjective reports of [Plaintiff] such as panic attacks that can happen any time. The State agency psychological consultants, who had a more longitudinal view of the record including considerable evidence after the psychological evaluation to consider, offer persuasive opinion evidence that is more consistent with the overall record and is better supported by evidence they cited, the rationale they provided, and hearing level evidence.

The State agency psychological consultants' assessments also noted inconsistencies in [Plaintiff]'s disability reports and in his reports to the psychological examiner as compared to other evidence in the record. For example, they noted [Plaintiff]'s denial of any use of marijuana to the psychological examiner in a setting of ongoing marijuana use despite his treating sources urging cessation of this drug. They also opine that the variability of the psychological examiner's opinions as they relate to the mental residual functional capacity, is due to this lack of consistency on the part of [Plaintiff]. The State agency psychological consultants noted that [Plaintiff]'s inconsistent reports calls into question the validity of the remainder of the statements he made to the psychological examiner. Hearing level evidence does reveal that the extent of limitations alleged by [Plaintiff] at the psychological evaluation is not supported by [Plaintiff]'s mental status exam findings, his mental health treatment records and reports to treating providers, and his revealed activities of daily living. The State agency psychological consultants focused on the objective evidence in the psychological examiner's reports. They opined that the variability between this psychological examiner's functional assessments and the mental assessments is due to inconsistencies in [Plaintiff]'s self-reports.

The State agency psychological consultants found mild limits in understanding, remembering and applying information and in interacting with others, and moderate limits in the other two paragraph B criteria. They suggested 1-4 step tasks that do not require a constant pace, with changes in duties that are infrequent and easily explained. The reconsideration assessment matches the initial assessment and thus both State agency psychological consultants agreed with the paragraph B limitations and the functional limitations resulting for [Plaintiff]'s mental disorders. After

6

> considering the totality of the record including the hearing level evidence and testimony not available to the State agency psychological consultants, I find that the suggested limitations remain supported throughout the period of alleged disability. I did define a constant pace for vocational clarity as no fast production rate pace, which takes into consideration [Plaintiff]'s reports of worsening symptoms with fast pace work. These suggested limitations by the State agency psychological consultants are overall consistent with [Plaintiff]'s reports to treating providers, his treatment history and his activities of daily living.

(Tr. 28-29).

Consistent with the above analysis, the ALJ limited Plaintiff to "1-4 step tasks that do not require a constant pace (defined as no fast paced production rate pace)" with "infrequent changes that can be easily explained." (Tr. 20). Before this Court, Plaintiff argues the mental RFC determined by the ALJ failed to include "all of the limitations provided by the State agency psychologists." (Doc. 18 at 7). Specifically, Plaintiff asserts that the ALJ should have added limitations for flexible breaks, for "off task" time, and more (unspecified) limitations relating to concentration, persistence and pace. According to Plaintiff, the ALJ substituted her lay opinion in place of opinions from the consultants that he was limited in his ability to complete a normal workday without interruptions from psychologically based symptoms or to perform at a consistent pace without an unreasonable number and length of rest periods. (Doc. 18 at 8).

However, none of the examining or consulting psychologists assessed the additional mental RFC limitations to which Plaintiff refers. It is true that the two reviewing psychologists, Joseph Edwards, PhD and Paul Tangeman, PhD, completed forms in which they both found Plaintiff to be "moderately limited" in the ability to carry out detailed instructions and to maintain attention and concentration for "extended periods." They both also found Plaintiff to be moderately limited in his ability to "complete a normal

7

workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 62, 87, 111). Notably, those limitations are not a mental RFC and do not require additional "off-task" time, frequent rest periods or unspecified additional absences from work. The same state agency form completed by Drs. Edwards and Tangeman invited them to assess "in narrative form" to "explain" (i.e., translate into mental RFC opinions) "the sustained concentration and persistence capacities and/or limitations" and any "adaptation capacities and/or limitations." (*Id*. at 87-88; *see also* Tr. 62) In that critical *narrative* RFC portion of the form, both consultants opined that despite "moderate" limitations, Plaintiff retains the ability to sustain work in a job that requires him to carry out 1-4 step tasks that does not require him to work at a constant pace, as long as changes in duties are infrequent and easily explained. (*Id*.) In short, the ALJ did not fail to adopt or include additional mental RFC limitations because the consulting psychologists themselves did not opine that any additional mental RFC limitations were required.

The undersigned also finds no error in the ALJ's evaluation of the opinions of the examining consulting psychologist as "persuasive only in part." (Tr. 28). That consultant, Marc Miller, PhD, did not offer *any* specific mental RFC opinions. Instead, Dr. Miller offered only vague and general opinions that Plaintiff has "some difficulty" in maintaining attention span and concentration, "no difficulty" in understanding, remembering and carrying out one and two step job instructions, and "difficulty due to …panic attacks and anxiety" with "dealing with stress and pressure in a work setting." (Tr. 330).[3] In translating

---
[3] Dr. Miller relied on Plaintiff's report that he suffers from frequent panic attacks that can happen any time. However, the ALJ pointed out that "the record does not document these frequent panic attacks, with the focus more on mild depression often controlled and some anxiety also improved." (Tr. 27).

8

those general opinions into specific mental RFC limitations, Drs. Edwards and Tangeman reviewed Dr. Miller's report in the context of other longitudinal evidence. They noted that the lack of consistency in Plaintiff's statements to Dr. Miller during his one-time consulting examination "calls into question the validity of the remainder of the statements [Plaintiff] made" during his exam. (*See*, *e.g.*, Tr. 84). Based upon the noted inconsistencies and record as a whole, the ALJ reasonably found Dr. Miller's opinion to be only "partially persuasive," interpreting his general opinions in a manner that was congruent with the more specific mental RFC opinions of the two non-examining consultants. Thus, the ALJ's analysis of Dr. Miller's report and opinions is also substantially supported.

### (b) Physical RFC Limitations

Plaintiff argues briefly that the ALJ committed additional error by failing to include "off task" time and flexible breaks and absences in his physical RFC. Again, I find no error. At the initial review level, a consulting physician found no severe physical impairments and exertional limitations at all. The ALJ reasonably rejected that opinion and instead relied heavily on the differing opinions of a second consulting physician, Linda Hall, M.D., at the reconsideration level. (Tr. 29-30). Consistent with the ALJ's physical RFC assessment, Dr. Hall opined that Plaintiff could perform a range of light work despite his impairments. (Tr. 84-85).

The ALJ explained her analysis as follows:

> [T]he state agency medical consultants carefully considered all evidence in the record in formulating their assessments. The initial assessment found no severe physical impairment and no physical limitations, but the reconsideration assessment found severe physical impairments and reduced [Plaintiff] to light exertional level work and the other limitations essentially adopted in [Plaintiff]'s final physical residual functional capacity. The reconsideration level had physical evidence through the end of January 2019, including information from [Plaintiff]'s doctor for migraines and

9

> medical evidence including the PEG feeding tube he was using. Months later, he stopped using the PEG tube to eat and was gaining weight. Also reviewed was evidence from Digestive associates including testing and information from Grant medical center (12/28/18), Dublin Methodist hospital (complaints of seizures), Mt. Carmel hospital records from [Plaintiff]'s motor vehicle accident in October 2018, and [Plaintiff]'s physical therapy records. The suggested physical residual functional capacity on reconsideration is persuasive as well supported by the evidence to the date of these assessments, and consistent with his treatment history and activities of daily living. Evidence not considered by the reconsideration assessment but carefully considered at the hearing level, does not support any new or different physical limitations. Reducing [Plaintiff] to his light exertional level work thoroughly covers all supported deficits from [Plaintiff]'s combined impairments. [Plaintiff] has had many normal physical exams, albeit with treatment for various physical impairments. The record does support his ability to perform frequent climbing of ramps and stairs. He has been precluded from climbing ladders, ropes, and scaffolds and reduced to the frequent level for stooping, kneeling, crouching, and crawling, with particularly consideration of [Plaintiff]'s subjective neck pain and migraines. In the abundance of caution, he has been provided seizure limitations as suggested by the reconsideration assessment, given the one "seizure," likely not epileptic, with no seizure treatment started, and with normal findings on work-up. Thus, he must also avoid all exposure to hazards such as unprotected heights and dangerous machinery and no commercial driving.
>
> Given the finding of no severe physical impairment on initial state agency consideration, this initial opinion is not persuasive as the record after this assessment, including the reconsideration assessment, clearly supports severe medically determinable impairment and residual functional capacity limitations throughout the record.

(Tr. 29-30).

In an attempt to undermine the above analysis, Plaintiff cites to clinical records that note his history of migraines, nausea and dizziness. Although the ALJ discussed Plaintiff's reported nausea and dizziness throughout the record, the ALJ included only migraines and gastroesophageal reflux disease among Plaintiff's list of "severe" impairments. Regarding nausea, the ALJ explained that the record showed "extensive work-ups with a variety of unremarkable etiology and no clear etiology." (Tr. 18).

Therefore, she considered Plaintiff's "nausea, vomiting and related symptoms… as symptoms of the above severe medically determinable impairments in combination with his nonsevere impairments." (*Id.*) The ALJ noted that despite Plaintiff's report that his nausea increases with activity, he "can tolerate long hours of working out as described at the hearing as well as cooking, cleaning, driving, socialization, shopping, and activities of personal interest." (Tr. 25). Similarly, the ALJ discussed and considered Plaintiff's reported dizziness in conjunction with his migraines, including relevant medical records. (Tr. 21, 22, 23, 24, 25).

Other than referencing the same medical records that refer to his migraines, nausea and dizziness, Plaintiff points to no additional evidence that support his assertion that those symptoms required additional work breaks or "off task" time. For example, no examining, consulting, or treating physician opined that Plaintiff had those limitations.

To the extent that Plaintiff is arguing that the ALJ should have listed his nausea and/or dizziness as separate "severe" impairments, I find no error because a mere diagnosis does not mean that an impairment is "severe." *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Moreover, an ALJ's failure to find an impairment to be severe at Step 2 does not provide grounds for reversal where the ALJ finds other severe impairments and proceeds through the sequential analysis as in this case. *See Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987).

**2. Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Subjective Complaints**

It appears that Plaintiff's main complaint concerns the ALJ's failure to fully credit his subjective reports that his migraines, nausea and dizziness symptoms were disabling – a complaint he presents as a second claim of error. The ALJ concluded that Plaintiff's

subjective statements "are not entirely consistent with the medical evidence and other evidence in the record," and that his "statements about the intensity, persistence, and limiting effects of his symptoms… are inconsistent with his actual reports in treatment records, his treatment history, his objective findings on exam, testing and imaging, and his activities of daily living." (Tr. 21). Plaintiff argues that the ALJ should have fully credited his subjective reports.

However, an ALJ's assessment of subjective symptoms, including pain complaints, is generally given great deference. *See Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In fact, a credibility/consistency determination[4] cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are inconsistencies and contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). Here, the ALJ noted many inconsistencies between the record presented and Plaintiff's allegations and testimony.

Still, Plaintiff complains that the ALJ inappropriately found his statements to be inconsistent with his limited daily activities. (Doc. 18 at 10). He argues that the ability to perform limited activities cannot be equated with work activity on a sustained basis. But the ALJ never equated the two. Instead, she simply considered the activities in the evaluation of Plaintiff's subjective complaints, as was appropriate. *See* Soc. Sec. Ruling

---

[4] An ALJ's assessment of symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added).

16-3p, 2017 WL 5180304, at *7-8 (listing daily activities as one of seven factors to be considered in evaluating the consistency of subjective complaints).  For example, Plaintiff alleged that he only had 2-4 hours per day when he was not dizzy or nauseous and alleged he mostly lies around all day in his disability report.  However, his reports were internally inconsistent with caring for his indoor cat and feeding 5 stray cats, doing laundry on his "good days" and meal prepping 3 meals for each day for the next 7 days on his alleged good days, socializing by telephone and on the computer with his girlfriend in New York with whom he planned to move in with but for financial issues, visiting with a friend, and driving four days a week to go to the gym and grocery store.  (Tr. 22, 66).  Plaintiff also testified that he spends 4-7 hours at the gym despite his symptoms, and was a full-time fitness professional through the end of September 2018.

Plaintiff further argues that in evaluating his subjective symptoms, the ALJ erred by failing to consider his efforts to obtain pain relief.  He maintains that the record reflects his "constant pain" from migraines and his attempts to obtain relief "from multiple doctors and physical therapies" in addition to rest and "multiple medications."  (Doc. 18 at 11).  However, the ALJ discussed Plaintiff's treatment history at length, including the "large gaps in his migraine treatment history, filing for disability prior to seeking further treatment for his complaints and then switching neurologists before the effectiveness of the treatment could be explored with large gaps in between specialists."  (Tr. 18-19).  The ALJ further noted that Plaintiff "worked at substantial gainful activity in the past despite his long history of migraines and his treatment history does not support adherence to prescribed treatment throughout."  (Tr. 19).  For example, Plaintiff stopped physical therapy allegedly due to transportation issues, but testified that all the appointments were

13

"too much for him," and explained he chose other medications over trying Botox for his migraines. (Tr. 21). He admitted the physical therapy was beneficial but aggravated his neck muscles while "working out on his own" and was "noncompliant …by missing appointments and not returning for large gaps." (Tr. 22-23). Among many other inconsistencies, the ALJ noted that:

> [P]rior to seeking new/different treatment or seeing a specialist, with the claimant having only tried over-the-counter medications for his migraines and unprescribed regular marijuana, he was looking into disability and seeing providers for assistance with this. He was doing this while still working at substantial gainful activity levels as a Personal fitness professional.

(Tr. 22). The ALJ reasonably explained why she believed that Plaintiff's treatment with a succession of three different neurologists undermined rather than enhanced the consistency of his complaints.

> [T]he record reveals that the claimant has not stayed with a neurologist for long enough to allow for treatment attempts, changes, and new treatments prior to gaps and then seeking a new neurologist. Also, he has been quick to ask whether the neurologist will fill out disability paperwork. At this visit, the neurologist informed the claimant that disability paperwork would not be completed. As noted, the claimant had not even been treating his migraines, nor seen a neurologist prior to filing for disability.

(Tr. 24).

Plaintiff's argument that this Court should interpret the same evidence in his favor is an invitation to re-weigh the evidence. But the narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence, deciding questions of credibility, or substituting the court's judgment for that of the ALJ. See Ulman v. Commissioner, 693 F.3d 709, 713 (6th Cir. 2012). Based upon a review of the record as a whole, the undersigned finds the ALJ's evaluation of Plaintiff's subjective complaints to be substantially supported.

14

### III. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** the decision of the Commissioner be **AFFIRMED** as supported by substantial evidence and that this case be **CLOSED**.

    *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JAMES A.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 2:21-cv-702

Watson, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. See *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).